CC: filer, JMS

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 11 2025 RR

at 1 o'clock and 50 min. ___M
Lucy H. Carrillo, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **MICHAEL MOORE & TROY MILES**<br>**PLAINTIFF**<br><br>Vs.<br><br>**FULL LIFE &**<br>**PROSERVICES HAWAII,**<br><br>**JAMES (JIM) KILGORE**, in his official capacity as Executive Director of Full Life, **DAVID COOPER**, in his official capacity as Program Director for Full Life, **AMERICA JENKINS (aka "AJ")**, in her official capacity as Director of People for Full Life, **LYRRA SAYMO**, in her official capacity as TDI Claims Examiner at ProService Hawaii<br><br>**DEFENDANTS** | **Case No.:**<br><br>**CV25 00338JMS RT**<br><br><br>**Jury Trial:** ☒ Yes ☐ No |

## COMPLAINT FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE AMERICANS WITH DISABILITIES ACT; DEMAND FOR JURY TRIAL

Plaintiffs **TROY MILES** and **MICHAEL MOORE** (collectively, "Plaintiffs"),

appearing Pro Se and joined under Rule 20 of the Federal Rules of Civil Procedure, hereby file

this Complaint against Defendants **FULL LIFE HAWAII, PROSERVICE HAWAII, JIM**

**KILGORE, AMERICA JENKINS, DAVID COOPER, AND LYRRA SAYMO** (collectively, "Defendants"), and allege as follows:

## I. INTRODUCTION

1. This action arises from Defendants' systematic discrimination against Black employees, retaliation against employees who engage in protected activities, and discrimination against employees with disabilities.

2. Plaintiffs Troy Miles and Michael Moore, both Black employees who held leadership positions at Full Life Hawaii, experienced a pattern and practice of race discrimination, including disparate treatment, hostile work environment, and retaliation for opposing discriminatory practices.

3. Additionally, Plaintiff Michael Moore experienced disability discrimination where Defendants unduly influenced his medical provider and solicited contradictory medical documentation to deny his reasonable accommodation.

4. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and costs for Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA/ADAAA").

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and 42 U.S.C. § 12117 (ADA).

2

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Hawaii, and because Defendants conduct business in this District.

### III. PARTIES

7. Plaintiff TROY MILES is an individual residing in Hawaii County, State of Hawaii. At all relevant times, Plaintiff Miles was an "employee" of Defendant Full Life Hawaii within the meaning of Title VII.

8. Plaintiff MICHAEL MOORE is an individual residing in Hawaii County, State of Hawaii. At all relevant times, Plaintiff Moore was an "employee" of Defendant Full Life Hawaii within the meaning of Title VII and the ADA/ADAAA.

9. Defendant FULL LIFE HAWAII is a Hawaii non-profit corporation with its principal place of business in Hawaii County, State of Hawaii. At all relevant times, Defendant Full Life Hawaii was an "employer" within the meaning of Title VII and the ADA/ADAAA. Defendant Full Life Hawaii operates as a Medicaid Waiver Provider under contract with the State of Hawaii, receives the majority of its funding from federal and state sources, and provides disability services under government regulation and oversight. In performing these functions, Full Life and its officers act under color of state law within the meaning of 42 U.S.C. § 1983.

10. Defendant PROSERVICE HAWAII is a Hawaii corporation with its principal place of business in Honolulu, Hawaii. ProService provided human resources and Professional

Employer Organization (PEO) services to Full Life Hawaii. ProService exercised control over employment decisions affecting Plaintiffs, including disciplinary actions.

11. Defendant JIM KILGORE is an individual residing in Kailua-Kona, State of Hawaii. At all relevant times,

12. Defendant Kilgore is and was the Executive Director of Full Life Hawaii and had supervisory authority over Plaintiffs.

13. Defendant Kilgore personally participated in, directed, and/or had knowledge of and failed to prevent the discriminatory and retaliatory conduct alleged herein.

14. Defendant Kilgore is sued in his individual capacity under 42 U.S.C. § 1983.

15. Defendant AMERICA JENKINS is an individual residing in Hawaii County, State of Hawaii.

16. At all relevant times, Defendant Jenkins is and was the Director of People, Organizational Development and Compliance at Full Life Hawaii and had supervisory authority over Plaintiff Moore.

17. Defendant Jenkins personally participated in, directed, and/or had knowledge of and failed to prevent the discriminatory and retaliatory conduct alleged herein.

18. Defendant Jenkins is sued in her individual capacity under 42 U.S.C. § 1983.

19. Defendant DAVID COOPER is an individual residing in Hawaii County, State of Hawaii.

20. At all relevant times, Defendant Cooper is and was the Program Director at Full Life Hawaii and had supervisory authority over Plaintiff Moore.

21. Defendant Cooper personally participated in, directed, and/or had knowledge of and failed to prevent the discriminatory and retaliatory conduct alleged herein.

4

22. Defendant Cooper is sued in his individual capacity under 42 U.S.C. § 1983.

23. Defendant LYRRA SAYMO is an individual residing in Honolulu, State of Hawaii.

24. At all relevant times, Defendant Saymo is and was employed as a Temporary Disability Insurance (TDI) Claims Examiner at Defendant ProService Hawaii, the Professional Employer Organization and human resources agent for Defendant Full Life Hawaii.

25. Defendant Saymo is sued in her individual capacity under 42 U.S.C. § 1983.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. Plaintiff Troy Miles timely filed Charge of Discrimination No. 486-2025-00187 with the Equal Employment Opportunity Commission ("EEOC") on or about January 15, 2025, alleging race discrimination and retaliation. Plaintiff Miles received a Notice of Right to Sue from the EEOC on or about May 15, 2025 (**See Exhibit A**), and has timely filed this action within ninety (90) days of receipt of that notice.

27. Plaintiff Michael Moore timely filed Charge of Discrimination No. 486-2025-00099 with the Equal Employment Opportunity Commission ("EEOC") on or about November 25, 2024, alleging race discrimination, disability discrimination, and retaliation. Plaintiff Moore received a Notice of Right to Sue from the EEOC on or about May 15, 2025 (**See Exhibit B**), and has timely filed this action within ninety (90) days of receipt of that notice.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff Troy Miles

5

28. Plaintiff Troy Miles is a Black male who was hired by Defendant Full Life as an Employment Program Coordinator on September 12, 2023, with a salary of $50,000 per year.

29. As Employment Program Coordinator, Plaintiff Miles was responsible for coordinating employment services for program participants with disabilities, as outlined in his job description.

30. Plaintiff Miles performed his job duties satisfactorily throughout his employment with Defendant Full Life, receiving positive feedback from his supervisors regarding his work, willingness to travel, participation in training, and assistance to colleagues and participants.

31. Plaintiff Miles loved working at Full Life and had intended to remain with the organization until retirement, as he explicitly expressed to Defendant Cooper: "You know, I love this place. My goal, and you already know this, was to retire. I was never going to leave, and there were some other things I had in the play that I really wanted to do for Full Life, and sorry I couldn't do those."

32. In anticipation of a long-term career at Full Life, Plaintiff Miles had undertaken initiatives to benefit the organization, including purchasing team-building and conflict-resolution programs and engaging senior personnel at the Department of Education, which were curtailed by Defendants' unlawful actions.

33. In April 2024, Defendant Full Life received a grant for a transition to work program on the island of Hawaii, and Defendant Kilgore informed Plaintiff Miles that he was responsible for overseeing this new program.

34. The new program responsibilities constituted substantial additional duties beyond Plaintiff Miles' original job description and would require significant additional time, effort, and expertise to implement.

35. Plaintiff Miles notified Defendant Kilgore that he would need two Specialists to assist him with the program or additional compensation of $15,000 annually to take on these expanded responsibilities.

36. Defendant Kilgore denied Plaintiff Miles' request, stating that overseeing the new program was within his existing duties, despite such responsibilities not being included in Plaintiff Miles' original job description or compensated accordingly.

37. Defendant Cooper subsequently advised Plaintiff Miles that Defendant Kilgore had agreed to pay him $7,500 to prepare the program, acknowledging that the work constituted additional responsibilities deserving of compensation.

38. In May 2024, Defendant Kilgore denied the $7,500 payment and the hiring of two Employee and Transition Specialists, citing lack of funding.

39. During a meeting with Defendant Kilgore and Defendant Jenkins, Plaintiff Miles explicitly refused to take on additional responsibilities without appropriate compensation, clearly distinguishing between "pitching in" and taking on new roles.

40. In this meeting, Plaintiff Miles emphasized his extensive experience in building similar programs and the complexity involved, supporting his argument that these were distinct jobs rather than extensions of his current role.

41. Defendant Kilgore acknowledged Plaintiff Miles' value and positive performance but cited financial constraints as the reason for not providing additional compensation.

7

42. Defendant Kilgore offered Plaintiff Miles an alternative position (Mia's vacancy) instead of proper compensation for the additional duties in his current role, which Plaintiff Miles declined.

43. On or about July 11, 2024, Plaintiff Miles stated to Defendant Cooper that Defendant Kilgore's refusal to provide additional compensation for the new program was, at worst, discriminatory. Defendant Cooper responded, "100%," thereby expressly agreeing with Plaintiff Miles' assessment of Defendant Kilgore's discriminatory conduct.

44. Despite expressly agreeing with Plaintiff Miles' assessment of Defendant Kilgore's discriminatory conduct, and possessing authority to whistleblow, investigate, hire, fire, and recommend compensation, Defendant Cooper failed to take any corrective action to remedy the discrimination against Plaintiff Miles.

45. During this same conversation, Defendant Cooper explicitly addressed Defendant Kilgore's pattern of discomfort with assertive Black women, specifically referencing Mia and Lauren (Cooper's predecessor): "Mia was difficult because Mia was the only person willing to call your ass out and push you. I was like, Mia wasn't difficult. Mia had experience and an opinion, and she was going to state it firmly, and I didn't tell him this, and you were very uncomfortable with a black woman telling you."

46. Defendant Cooper further elaborated on this pattern of racial bias by stating: "Same thing with my predecessor, Lauren. He was very uncomfortable with a strong, smart black woman, albeit she was a different end of the spectrum... From the get-go, he couldn't handle the fact that she was going to call him out in a team meeting and be like, actually, that's not a good idea. I think we should do it this way. He does not respond to that well."

47. Defendant Cooper also informed Plaintiff Miles that Defendant Kilgore had labeled Plaintiff Miles as "difficult," further demonstrating Defendant Kilgore's pattern of racial bias against assertive Black employees.

48. Defendant Cooper's statements directly described a pattern of Defendant Kilgore exhibiting racial bias and discomfort with assertive Black employees, including Plaintiff Miles, Mia Manzo, and Lauren Lee.

49. On June 3, 2024, Plaintiff Miles submitted his resignation with his last day of employment being June 30, 2024.

50. Despite knowing about the discrimination and Plaintiff Miles' desire to remain with Full Life until retirement, Defendant Cooper approved Plaintiff Miles' resignation instead of taking corrective action to address the discrimination.

51. Prior to Plaintiff Miles' departure, Defendants Full Life, Kilgore, Cooper, and Jenkins announced openings for his position and two Employee and Transition Specialist positions—the same positions Plaintiff Miles had requested and been told could not be funded.

52. Defendant Kilgore, with Defendant Jenkins participating in the hiring process, subsequently hired white females and a non-Black female for these positions.

53. Defendants' subsequent funding and filling of these positions demonstrate their prior claim of financial constraints was pretextual. Defendants thereby treated Plaintiff Miles, a Black male, less favorably than the non-Black individuals hired for these roles.

54. At all relevant times, Defendant Full Life maintained an Employee Handbook containing policies prohibiting discrimination and retaliation in the workplace.

55. Defendant Full Life's Employee Handbook prohibits unlawful discrimination on the basis of race, color, religion, sex, gender identity, age, disability, and all other categories protected by federal, state, or local law.

56. Defendant Full Life's Employee Handbook prohibits harassment or abusive treatment of employees or applicants, including harassment based on race, color, religion, sex, gender identity, age, disability, and other protected categories.

57. The Whistleblowers Policy in Defendant Full Life's Employee Handbook requires employees to report suspected legal or policy violations to their supervisor or HR.

58. Notwithstanding these established written policies, Defendants Full Life, Kilgore, Cooper, and Jenkins, subjected Plaintiff Miles to discrimination based on his race and unlawfully retaliated against him for opposing and reporting said discriminatory practices, in violation of Defendant Full Life's policies and applicable law.

### B. Plaintiff Michael Moore

59. Plaintiff Michael Moore was hired by Defendant Full Life Hawaii as a Quality Assurance Specialist on or about August 24, 2022, at an annual salary of $39,520.00.

60. The Quality Assurance Specialist position included responsibilities for writing quarterly reports, assisting with Quality Assurance Department functions, data collection and analysis, overseeing the Quality Management Committee, and ensuring regulatory compliance.

61. Plaintiff Moore has a chronic disability, scoliosis, which substantially limits one or more major life activities, including but not limited to sitting and standing for prolonged periods.

10

62. On or about August 24, 2022, shortly after his hire, Plaintiff Moore disclosed his disability to his then-supervisor at Full Life, Lauren Lee, and requested remote work as a reasonable accommodation.

63. This request was granted, and Full Life provided Plaintiff Moore with a formal ADA accommodation to perform his duties primarily remotely. This remote work accommodation was effective and allowed Plaintiff Moore to successfully perform the essential functions of his job. This accommodation remained in place without issue for over two years.

64. On or about July 1, 2023, Plaintiff Moore received a salary increase to $45,760.00 annually.

65. On or about October 16, 2023, due to his meritorious performance, Plaintiff Moore was promoted to Quality Assurance Lead with a salary increase to $52,000.00 annually, less than 14 months after his initial hire.

66. The Quality Assurance Lead position expanded Plaintiff Moore's responsibilities to include leadership of the Quality Assurance Department, supervision of quality assurance initiatives, and oversight of regulatory compliance.

67. Plaintiff Moore continued to perform these duties successfully under his remote work ADA accommodation.

### Protected Activity, Retaliation, and Discriminatory PIP

68. On or about September 21, 2023, Plaintiff Moore verbally reported to his then-supervisor, Defendant David Cooper, his good-faith belief and concern that Defendant America

11

Jenkins was engaging in racial discrimination against Black employees. Defendant Cooper took no action to investigate or address these concerns.

69. Subsequently, on or about July 25, 2024, Plaintiff Moore's supervision was transferred to Defendant Jenkins.

70. On November 15, 2024, Plaintiff Moore submitted an EVV (Electronic Visit Verification) Compliance Report (hereinafter "EVV Report"). The EVV Report identified significant compliance issues in practices overseen by Defendant Jenkins and critiqued management's punitive approach to compliance. Submission of this report constituted protected activity.

71. Just six (6) days later, on November 21, 2024, immediately following a meeting purportedly convened to discuss the EVV Report, Defendant Jenkins issued Plaintiff Moore a punitive Performance Improvement Plan ("PIP").

72. The PIP contained vague and subjective performance criticisms that were not supported by Plaintiff Moore's actual work performance or previous evaluations.

73. Defendant Full Life's Position Statement submitted to the EEOC regarding Plaintiff Moore's charge of discrimination contains contradictory information about when the PIP process began, stating both that "On October 31, 2024, Defendant Jenkins began the process of issuing a PIP" and that "Respondent began drafting the PIP on or before October 30, 2024."

74. Defendant Full Life's Position Statement falsely claims the PIP was due to "months of declining performance." However, in a December 11, 2024 letter to Plaintiff Moore,

12

Defendant Jim Kilgore, directly contradicted this, admitting the PIP "focused more on managing your work schedule and hours than on addressing core performance issues."

75. Defendant Full Life's Position Statement further claims "the PIP issued to Plaintiff Moore had been in the works for weeks prior to Plaintiff Moore's submission of the EVV Compliance Report, and was not in any way related to the report" and that "the PIP was 90% completed" by the time the EVV Compliance Report was received. Defendants have provided no contemporaneous evidence to support this timeline.

76. Defendant Cooper, in a sworn statement in his Workplace Harassment Interview on December 05, 2024 stated that Defendant Jenkins sent him a first draft of the PIP and admitted that Defendant Jenkins **included the EVV incident in the final version of the PIP.** This demonstrates the PIP was directly related to Plaintiff Moore's protected EVV Report.

77. For other employees with alleged performance issues, Full Life utilized a standardized 4-tier PIP with clear timelines and progressive steps.

78. In stark contrast, Plaintiff Moore received a punitive PIP lacking any timeframe, imposing excessive oversight requirements (including a demand for in-office presence that effectively revoked his ADA accommodation), and containing immediate threats of termination, evidencing disparate treatment.

79. The revocation of his accommodation caused Plaintiff Moore significant hardship, as he would be unable to perform his job duties effectively without the medically necessary remote work arrangement.

80. Defendants made it clear that Plaintiff Moore's continued employment was contingent on his acceptance of the discriminatory treatment and the denial of his reasonable accommodation.

81. Defendants' revocation of Plaintiff Moore's reasonable accommodation was discriminatory and violated the ADA/ADAAA.

82. The issuance of the PIP to Plaintiff Moore was retaliatory in nature, designed to create a pretext for adverse employment action against Plaintiff Moore for filing his EEV Report.

83. On or about June 5, 2025, Plaintiff Moore was constructively discharged from his employment with Defendant Full Life.

84. Plaintiff Moore's constructive discharge was the direct result of Defendants' discriminatory conduct, retaliation, and denial of reasonable accommodations.

## VI. CAUSES OF ACTION

### Claims of Plaintiff Troy Miles

### COUNT I: Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2) (Against Defendant Full Life Hawaii and Defendant ProService Hawaii)

85. Plaintiff Miles incorporates by reference all preceding allegations pertaining to Plaintiff Miles as if fully set forth herein.

86. At all relevant times. Defendant Full Life Hawaii ("Full Life") was an employer and Defendant ProService Hawaii ("ProService") was an employer, joint employer, and/or agent of an employer, within the meaning of Title VII, 42 U.S.C. § 2000e(b).

87. Plaintiff Miles is a Black male and a member of a protected class under Title VII.

88. Plaintiff Miles was qualified for his position as Employment Program Coordinator and performed his job duties satisfactorily.

89. Defendant Full Life, by and through its officers and agents including Defendants Kilgore, Jenkins, and Cooper, and Defendant ProService, by and through its agency relationship with Full Life and its own actions, subjected Plaintiff Miles to adverse employment actions because of his race, in violation of 42 U.S.C. § 2000e-2(a). These adverse employment actions included, but were not limited to:

a. Denying Plaintiff Miles appropriate compensation for substantially expanded job responsibilities related to the new grant program, despite acknowledging the additional work and his qualifications;

b. Failing to provide Plaintiff Miles with the requested and necessary support staff (two Specialists) to manage the new grant program, thereby creating an unsustainable workload; and

c. Creating and maintaining working conditions so intolerable that a reasonable person in Plaintiff Miles' position would have felt compelled to resign, resulting in his constructive discharge.

90. Specifically, Defendant Kilgore, acting on behalf of Defendant Full Life, refused to compensate Plaintiff Miles adequately for overseeing the new grant program, despite

Defendant Cooper's internal acknowledgment and express agreement with Plaintiff Miles that this refusal was discriminatory.

91. Defendants' proffered reason for denying Plaintiff Miles compensation and support (lack of funding) was pretextual, as evidenced by their subsequent funding and hiring for the same and additional related positions with non-Black individuals after Plaintiff Miles was forced to resign to the intolerable working conditions created by Defendants.

92. Defendants treated Plaintiff Miles less favorably than similarly situated non-Black employees with respect to compensation, resources, and opportunities.

93. The actions of Defendants, particularly the admissions by Defendant Cooper regarding Defendant Kilgore's racial bias, discomfort with assertive Black employees, and specific labeling of Plaintiff Miles as "difficult," demonstrate that Plaintiff Miles' race was a motivating factor in Defendants' adverse employment decisions.

94. As a direct and proximate result of Defendants' race discrimination, Plaintiff Miles has suffered significant damages, including but not limited to:

a. Lost wages, benefits, and other compensation resulting from the denial of appropriate pay for expanded duties and his subsequent constructive discharge;

b. Emotional distress, humiliation, and loss of enjoyment of life stemming from the discriminatory treatment, the unsustainable workload, and the forced resignation from a job he intended to keep until retirement; and

c. Other pecuniary and non-pecuniary losses.

**COUNT II: <u>Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a)) (Against Defendant Full Life Hawaii and Defendant ProService Hawaii).</u>**

95. Plaintiff Moore incorporates by reference all preceding allegations pertaining to Plaintiff Moore as if fully set forth herein.

96. At all relevant times, Defendant Full Life was an employer and Defendant

97. ProService was an employer, joint employer, and/or agent of an employer, within the meaning of Title VII.

98. Plaintiff Moore is a Black male and a member of a protected class under Title VII.

99. Plaintiff Moore was qualified for his position and performed his duties satisfactorily, as evidenced by his promotions and salary increases.

100. Similarly situated non-Black employees were not subjected to comparable adverse treatment.

101. Defendants subjected Plaintiff Moore to adverse employment actions because of his race, in violation of 42 U.S.C. § 2000e-2(a). These actions included, but were not limited to, the issuance of a punitive and pretextual PIP with disparate terms compared to those reportedly used for non-Black employees, the revocation of his accommodations under circumstances suggesting racial animus (including his supervision being transferred to an individual he had accused of racial bias), and ultimately terminating his employment.

102. These adverse actions occurred in a context where management (Defendant Cooper) admitted to Defendant Kilgore's racial bias against assertive Black

17

employees, and where other Black employees, including Co-Plaintiff Miles, experienced a pattern of disparate treatment and marginalization. Non-Black employees were not subjected to similar scrutiny or adverse treatment.

103. Defendants' actions were motivated, in whole or in part, by Plaintiff Moore's race.

104. As a direct and proximate result of Defendants' race discrimination, Plaintiff Moore has suffered damages, including but not limited to lost wages and benefits, emotional distress, and other pecuniary losses.

**COUNT III: Retaliation for Opposing Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)) (Against Defendant Full Life Hawaii and Defendant ProService Hawaii).**

105. Plaintiff Moore incorporates by reference all preceding allegations pertaining to Plaintiff Moore as if fully set forth herein.

106. Plaintiff Moore engaged in protected activity under Title VII, 42 U.S.C. § 2000e-3(a), by, inter alia:

a. Verbally reporting suspected racial discrimination by Defendant Jenkins to Defendant Cooper on or about September 21, 2023; and

b. Submitting the EVV Report on November 15, 2024, which criticized management practices overseen by Defendant Jenkins and implicitly opposed practices Plaintiff Moore reasonably believed were unfair or disparate.

107. As a direct and proximate result of Plaintiff Moore's protected activities, Defendants took adverse employment actions against him. These actions included, but were not limited to, subsequently transferring his supervision to Defendant

Jenkins whom he had accused of discrimination, issuing a punitive and pretextual PIP immediately following his EVV Report, revoking his accommodations, improperly influencing his medical documentation to support adverse action, and ultimately terminating his employment.

108. There is a causal connection between Plaintiff Moore's protected activities and the adverse employment actions taken by Defendants.

**COUNT IV: Disability Discrimination in Violation of the Americans with Disabilities Act, as amended (42 U.S.C. § 12112(a)) (Against Defendant Full Life Hawaii and Defendant ProService Hawaii).**

109. Plaintiff Moore incorporates by reference all preceding allegations pertaining to Plaintiff Moore as if fully set forth herein.

110. At all relevant times, Defendant Full Life was an employer and Defendant ProService was an employer, joint employer, and/or agent of an employer, within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008 ("ADA/ADAAA").

111. Plaintiff Moore is a qualified individual with a disability (scoliosis) within the meaning of the ADA/ADAAA, which substantially limits one or more of his major life activities.

112. Defendants were aware of Plaintiff Moore's disability and his need for the reasonable accommodation of remote work, which had been provided since August 2022 and allowed him to perform the essential functions of his job successfully.

113. Defendants subjected Plaintiff Moore to adverse employment actions because of his disability, in violation of 42 U.S.C. § 12112(a). These actions included, but were not limited to, revoking his established reasonable accommodation for remote work, and imposing a punitive and pretextual PIP based in part on issues related to his disability and need for accommodation, and ultimately terminating his employment.

114. As a direct and proximate result of Defendants' disability discrimination, Plaintiff Moore has suffered damages, including but not limited to lost wages and benefits, emotional distress, and other pecuniary losses.

## COUNT V: Deprivation of Equal Protection Under Color of State Law (42 U.S.C. § 1983) - Race Discrimination (Against Defendants Full Life Hawaii, ProService Hawaii, Kilgore, Jenkins, Cooper, and Saymo).

115. Plaintiffs Miles and Moore incorporate by reference all preceding allegations as if fully set forth herein.

116. At all relevant times, Defendants Full Life Hawaii, acting through its officers and agents including Defendants Kilgore, Jenkins, and Cooper, and Defendants ProService Hawaii and Saymo, were acting under color of state law within the meaning of 42 U.S.C. § 1983.

117. Defendants' actions were taken under color of state law because Full Life Hawaii operates as a Medicaid Waiver Provider under contract with the State of Hawaii, receives the majority of its funding from federal and state sources, and provides disability services under government regulation and oversight. ProService Hawaii acts as Full Life's agent in providing human resources services and exercising control over employment decisions.

118. Plaintiffs Miles and Moore, as Black males, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

119. This discrimination against both Plaintiffs occurred within a documented pattern and practice of racial bias against Black employees at Full Life Hawaii, including:

a. Management's admission (by Defendant Cooper) of Defendant Kilgore's racial bias and discomfort with assertive Black employees;

b. The labeling of Black employees, including both Plaintiffs, as "difficult" for professional assertiveness;

c. Disparate treatment compared to similarly situated non-Black employees.

120. As to Plaintiff Miles specifically, this discrimination included:

a. Denying appropriate compensation for expanded job responsibilities related to the new grant program;

b. Refusing necessary support staff despite acknowledging the additional workload;

c. Creating intolerable working conditions that forced his constructive discharge; and

d. Subsequently hiring non-Black individuals for the same positions that were allegedly unavailable due to funding constraints.

121. As to Plaintiff Moore specifically, this discrimination included:

a. Issuing a punitive and pretextual Performance Improvement Plan immediately following his submission of the EVV Report;

b. Transferring his supervision to an individual (Jenkins) he had previously reported for racial discrimination;

c. Revoking his long-standing ADA accommodation; and

21

d. Ultimately terminating his employment.

122. Defendants' discriminatory conduct was intentional and undertaken with deliberate indifference to both Plaintiffs' constitutional rights

123. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights under the Equal Protection Clause. both Plaintiffs have suffered damages including but not limited to lost wages and benefits. emotional distress, humiliation, and other pecuniary and non-pecuniary losses.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

**Declaratory Relief**: A declaration that Defendants' conduct violated Title VII, the ADA/ADAAA, and 42 U.S.C. § 1983.

**Injunctive Relief**: An order requiring Defendants to:

**a.** Immediately reinstate Plaintiff Miles to his former position as Employment Program Coordinator or a substantially equivalent position, with appropriate compensation and benefits reflecting what he would have received absent the discrimination;

**b.** Immediately reinstate Plaintiff Moore to his former position as Quality Assurance Lead or a substantially equivalent position, with his pre-existing and medically necessary ADA accommodation for remote work fully restored, and with appropriate compensation and benefits reflecting what he would have received absent the discrimination and retaliation;

22

**c**. Cease and desist from all discriminatory and retaliatory practices, including but not limited to, race discrimination, disability discrimination, revoking reasonable accommodations without proper basis, improperly influencing or interfering with employees' medical certification processes, and retaliating against employees for engaging in protected activities;

**d**. Develop and implement effective EEO training programs for all managers, supervisors, and employees, addressing race discrimination, disability discrimination, reasonable accommodations, and retaliation, with such training to be supervised by a court-appointed monitor or other mutually agreeable third party for a specified period;

**e**. Expunge from Plaintiffs' personnel files any and all adverse or disciplinary records related to or stemming from the unlawful discriminatory and retaliatory actions alleged herein; and

**f**. Post notices in conspicuous locations at Defendants' workplaces affirming their commitment to non-discrimination and compliance with federal employment laws.

**Compensatory Damages**: Award compensatory damages to Plaintiffs for all economic and non-economic harm suffered as a direct and proximate result of Defendants' unlawful conduct, including but not limited to:

**a**. Back pay, representing all lost wages, salaries, bonuses, and other compensation from the date of adverse action to the date of judgment, with prejudgment interest;

**b**. Front pay, in lieu of or in addition to reinstatement, representing future lost earnings and benefits;

**c**. Lost employment benefits, including but not limited to health insurance, retirement contributions, and accrued paid time off;

23

**d**. Damages for emotional distress, pain and suffering, humiliation, mental anguish, and loss of enjoyment of life;

**e**. Medical expenses incurred by Plaintiff Moore as a result of the emotional distress caused by Defendants' actions.

**Punitive Damages**: For both Plaintiffs, punitive damages under Title VII and the ADA/ADAAA, to punish Defendants for their malicious and/or reckless indifference to Plaintiffs' federally protected rights and to deter future similar misconduct.

**Interest, Attorneys' Fees, and Costs**:

**a**. Pre-judgment and post-judgment interest on all monetary awards at the highest lawful rate;

**b**. Reasonable attorneys' fees (if counsel is retained and pursuant to 42 U.S.C. § 2000e-5(f)(1)); and

**c**. Costs of this action as allowed by law.

**Other Relief**: Such other and further relief as this Court may deem just and proper.

DATED: 8/2/25

Michael Moore, Plaintiff Pro Se
24 Pukihae St., #223 Hilo HI 96720
moore.michael14@gmail.com
808-746-4601

Troy Miles, Plaintiff Pro Se
PO Box 595
Pahoa, HI 96778
neteru11@gmail.com
314-532-6975

24

Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED: 8/2/25

Michael Moore, Plaintiff Pro Se
24 Pukihae St, Apt 223
Hilo HI, 96720
moore.michael14@gmail.com
808-746-4601

_____

Troy Miles, Plaintiff Pro Se
PO Box 595
Pahoa, HI 96778
neteru11@gmail.com
314-532-6975